Spear, C. J.
For three years prior to August 4,1888, Walter S. Payne, the defendant, and Nicholas Portz and Charles Foster, were partners, carrying on the business of brass and iron works, and foundry and machine shops, at Fostoria, in the county of Seneca, under the firm name of Walter S. Pajme & Co. The firm had expended about one hundred dollars per year in advertising, and had built up a considerable trade. On the above date an agreement of dissolution was entered into, Payne thereby selling to the other two his entire interest in the firm business and assets. Portz and Foster were to continue in occupancy of the old stand, were to close up the business of the old firm, receive the debts due to, and pay the debts due by, the old firm, and have the use of the firm name for the period of sixty days, or until the 'formation of a corporation within that time for the continuance of the business at the same place. A corporation was subsequently organized bj1- them, in conjunction with three others, under the corporate name of “The Brass & Iron Works Co.,” to which company Portz and Foster transferred all the right and privilege derived from Payne under the contract of dissolution, as well as all their own interest in. the firm of Walter S. Payne & Co., and the business was thereafter conducted at the old stand by The Brass & Iron Works Co. as the successor of the old firm of Walter S. Payne & Co.
After so selling his interest, Payne started and carried on for sixty days, as Walter S. Pa3me, a business similar to that which had been carried on by the old firm, in the meantime purchasing stock and supplies from his former partners at a discount of ten per cent, in excess of discount allowed to other purchasers, which privilege was provided for in the contract of dissolution. After sixt3r days from the dissolution Payne started at a place three blocks from the old stand *117 under the name of Walter S. Payne & Co., and, in various ways, advertised his business as conducted by Walter S. Payne & Co., so as to lead the public to understand that his was a continuation of the old firm, though he did riot seek to take advantage of the pecuniary responsibility of the former firm.
Other facts appear in the record, but the foregoing are believed to be sufficient for an understanding of the point of law involved in the case.
The action below was for injunction to prevent defendant from using the firm name of Walter S. Payne & Co., at Fostoria, in connection with business similar to that carried on by the plaintiff. It was not asked that Payne cease to use his own name alone. The court of common pleas, upon trial, found for the plaintiff. Payne appealed to the circuit court, which court dissolved the injunction and dismissed the petition.
The single question of law presented by the record is whether or not, where a partnership is dissolved, one partner transferring to the others all his interest in the firm business and assets, with the understanding that the others are to succeed to the business of the old firm, and carry it on at the old stand, but not to use the old firm name beyond a specified time, the retiring member can lawfully use that name in a similar business thereafter carried on by him in the vicinity.
We assume it to be settled law that, upon a sale by one partner of all his interest in the joint property and effects, to the others, who are to continue the business, his interest in the good will of the concern goes with the sale, unless stipulated otherwise. Good will is defined in Churton v. Douglas, Johnson’s (Eng.) Chy. 174, as “ every advantage that has been acquired by the old firm in carrying on its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm.” Of this good will the firm name is an important part. It is in the nature of property, and is so treated by courts of equhy. So that, when the retiring partner sells his entire interest, he parts with his interest in the firm name. *118 Whether or not the purchasers acquire an unconditional right to use the firm name may depend upon circumstances. As, for instance, if use of the firm name by them ■ would lead to a belief on the part of the public that the retiring partner is still associated with them, to his injury, such use might be enjoined. McGowan & Co. v. McGowen, 22 Ohio St. 370. But this does not affect the rule as above stated. Parsons on Part. *409; Bates on Part. §669; High on Injunction, §1080, 1345.
Having parted with his interest in the firm name, upon what principal should the seller be permitted to so use it as to work an injury to the purchasers? What right has he to derogate from his own grant ? He may carry on a like business in the immediate vicinity, and may solicit the patronage of old customers, both by advertisement and private solicitation, so long as he does not mislead customers into the belief that he is carrying on business as the successor of the old •firm, but this does not involve an appropriation of anything which he once possessed, but has, for a valuable consideration, sold. To do this is an essentially different thing from appropriating to his own use that which he has parted with to others, to-wit: the good disposition which customers entertain toward the house by the particular name or firm, and which may induce them to continue their custom. In the one case he is but taking advantage of that which belongs to him; in the other he is interfering with that which he has sold. He may use his own, but he may not use that which is not his own. And that the use by the retiring partner of the former firm name in a similar business would tend to draw customers from the other to himself, and thus work an injury, would seem too plain to need argument in its support. It seems equally clear that in a matter of this kind, where the injury is an interruption of business, causing a diminution of it, it is difficult to establish damage to a high degree of certainty, and by direct proof. Hence, in order to entitle the purchasing partners to the interposition of a court of equity to forbid a continuance of the wrong, it is not necessary, nor important, that they first show, by proof, special pecuniary damage.
*119 Can it make any difference that, in the present case, the contract of dissolution did not authorize the plaintiff to usé the old firm name beyond a specified time? We think not. When Payne withdrew, his partners took his entire interest. They were to receive all the claims and assets of the old firm, were to pay all its debts, and were to continue the same business at the old stand. In other words, by whatever name they might be known, they were to be, and were in law, the successors of the old firm. This gave them the right to identify their business as the business formerly carried on by Walter S. Payne & Co. For every purpose save the right, after expiration of the limited time, to use the old firm name, they were the owners of the good will, and were entitled to be protected from the wrongful use of the old firm name by the defendant. 17 Am. & Eng. Ency. of Raw, 1189; Churton v. Douglas, supra; Mossop v. Mason, 18 Grant’s Ch’y 453; Hudson v. Osborne, 39 L. J. Ch’y, 79 ; Shackle v. Baker, 14 Vesey, Jr., 469, note ; Smith v. Cooper, 5 Abb. N. Cas. 274; Adams v. Adams, 7 do 292; Myers v. Kalamazoo Buggy Co., 54 Mich. 215; Hoxie v. Chaney, 143 Mass. 592.
Upon the admitted facts and the facts found, the plaintiff was entitled to a prepetual injuction, restraining the defendant from using, in his business at Fostoria, the name of Walter S. Payne & Co., and from holding himself out as the successor of said firm of Walter S. Payne & Co. In refusing this relief, we think, the circuit court erred. The judgment will, therefore, be reversed, and judgment entered for plaintiff in conformity with this opinion.

Judgment reversed.