**Mrs. C. H. KILFOYLE, Plaintiff,**

v.

**W. M. WRIGHT and Gulf Oil Corporation, a Corporation, Defendants.**

**Civ. A. No. 1835.**

United States District Court
S. D. Alabama, S. D.
Dec. 1, 1960.

900

Albert J. Tully, Holberg, Tully, Hodnette & Mobley, Mobile, Ala., for plaintiff.

Wm. Dewitt Reams, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for Wright.

C. C. Richmond and Wm. R. Harris, Jackson, Miss., Sam W. Pipes, III, Lyons, Pipes & Cook, Mobile, Ala., for Gulf Oil Corp.

DANIEL HOLCOMBE THOMAS, District Judge.

The plaintiff brought this action under Sections 2201 and 2202, Title 28 U.S.C., seeking a declaratory judgment against the defendants and praying that the Court adjudicate her rights as to mineral and royalty interests in certain real property located in Citronelle, Mobile County, Alabama. The defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., as to certain issues, on the basis of the pleadings, depositions, affidavits and other documents admitted into evidence.

Two questions are raised by the motions for summary judgment. These questions are (1) whether or not a deed from the defendant Wright to the plaintiff included a tract of land identified as Lot 13 in Block 23, even though this specific lot is not mentioned in the deed of conveyance; and (2) what interests were conveyed by the deed from Wright to Mrs. Kilfoyle. These questions will be discussed in the above order.

## Lot Number 13

On August 25, 1943, one Benjamin Harris and his wife conveyed certain real property to the defendant, W. M. Wright. The instrument of conveyance described the property as follows:

"A tract of land situated in Town site of Citronelle, Mobile County, Alabama, described as Lots 13, 15, 17, and 19 Block 23, and Lots 14, 16, 18, 5 and 7 Block 24."

There is no dispute as to whether or not Harris conveyed good title to Wright.

By a deed dated September 2, 1943, Wright conveyed to the plaintiff, Mrs. C. H. Kilfoyle, his entire royalty interest in the following described property:

"Lots 15, 17, 19 in Block 23, Lots 14, 16, 18, 5 and 7 in Block 24 * * * (There follows a boundary description.); and being the same land conveyed * * * to Benjamin Harris by warranty deed recorded in Deed Book No. 244, page 581, Mobile County, Alabama, Records, and conveyed by said Benjamin Harris to W. M. Wright on August 24, 1943, by deed recorded in said Records of Mobile County, Alabama, * * *."

Lot 13 which appears in the Harris to Wright deed is obviously not mentioned by number in the deed from Wright to the plaintiff. Although a comparison of the land description in the deed on a plot map of the Citronelle area does not coincide with the lot numbers purported to have been transferred, said description does include Lot 13. The defendants

contend that the omission of any reference to Lot 13 in the deed precludes any claim which the plaintiff may have to that particular parcel of land. The plaintiff takes the position that it was the intention of the parties that the lot should be included and that that intent should be given effect here.

Before discussing the law on this subject, it would be beneficial to digress and review the facts leading up to the conveyance here in issue. Mrs. Kilfoyle is a resident of Texas and Wright is a resident of Alabama. In the summer of 1943, the plaintiff came to Mobile, Alabama, for the purpose of buying mineral interests in that area. Wright offered to sell her the interests in his property at this time, but negotiations were not consummated while Mrs. Kilfoyle was in Mobile. After she returned to Texas, Wright again contacted her with regard to selling the royalty interest in his property. An agreement was reached and Wright forwarded a description of the property to the plaintiff. The plaintiff prepared the deed and mailed it to the defendant for execution; Wright executed the deed and returned it to the plaintiff. The absence of Lot 13 in the deed was never mentioned by the parties until the beginning of this litigation. Since 1943, oil has been discovered in the Citronelle area and presently there are over 100 wells producing oil. Consequently, the interest held by the plaintiff has become very valuable.

The solution as to whether or not the lot was meant to be conveyed by the 1943 deed rests upon a determination of the intention of the parties, especially the intent of the grantor. Taylor v. Hancock, 1933, 227 Ala. 645, 151 So. 596; Pendrey v. Godwin, 1914, 188 Ala. 565, 66 So. 43. This intent may be ascertained by examining the circumstances at the time the deed was made,[1] by examining related instruments between the same parties in respect to the same subject-matter,[2] and by examining the sub-

---

1. Williams v. Johns-Carroll Lumber Co., 1939, 238 Ala. 536, 192 So. 278.

2. Taylor v. Hancock, supra; Smith v. Smith, 1907, 153 Ala. 504, 45 So. 168.

sequent actions of the parties with regard to the property transferred.

Obviously, Wright was of the opinion that he had conveyed Lot 13 to the plaintiff because in November of 1955, some twelve years after the deed was executed, he wrote her:

> "The Lots that you have the Royalty under on this drilling site is Lots 19, 17, 15, and *13* Block 23 and * * *." [3] (Emphasis supplied.)

Evidently Gulf Oil was of the same opinion because in December of 1955, its legal department wrote the plaintiff seeking the ratification of a lease which conveyed a "full interest lease in Lots 13, 15, and 17, Block 23." [4]

However, these are not the only facts which aid in ascertaining the grantor's intent. The deed itself, while omitting the actual lot number, does include the lot in the property description. Furthermore, the deed goes on to identify the property by making reference to the "same land conveyed" to Harris and recorded in the Mobile County records and then conveyed by Harris to Wright. The defendants contend that the words "being the same land" do not enlarge the conveyance to include all the land conveyed by Harris to Wright, but merely serve to call attention to the links in the chain of title. They direct the Court's attention to the cases of Brown v. Heard, 1893, 85 Me. 294, 27 A. 182, and Fidelity Mortgage Guarantee Co. v. Bobb, 1932, 306 Pa. 411, 160 A. 120. These cases, while not binding upon this Court, do support the proposition of law for which they are cited. In the Bobb case, the court states:

> "The clause beginning, 'Being the same premises' is obviously put into a deed for the purpose of calling attention to the links in the chain of title. It is placed there for that purpose rather than for the purpose of

completely identifying the property conveyed." 160 A. at page 121.

 I cannot agree that this is the sole construction to be applied to this phrase or wording. In the instant case, the words may be considered along with the remainder of the deed in ascertaining the intent of the parties and in the proper construction of the deed. In order to determine what the parties intended to pass by the deed, every clause and part of it should be carefully examined.[5] When reading, as a whole, the instrument now before the Court, I think it was clearly the intent of the grantor to convey an interest to Mrs. Kilfoyle in Lot 13, Block 23. Indeed, I think his subsequent actions evidence the fact that he himself thought he had transferred this interest.

Why the lot number was omitted from the deed is not within the purview of the Court to say. Perhaps the plaintiff negligently erred in preparing the deed or perhaps Wright negligently omitted the lot number from the description he forwarded to her. Who was in error is irrelevant because I think the evidence is clear and convincing that the parties intended Lot 13 to be included in the conveyance. Having concluded that the plaintiff did acquire an interest in Lot 13, the defendants' motion for summary judgment as to this issue is denied.

### Interest Conveyed

The second question raised by the defendants' motions is what interests were conveyed by the deed from Wright to Kilfoyle. The defendants contend that the deed conveyed nothing more than a royalty interest in and to the property, with the right to lease remaining in Wright. Prior to the instigation of this action by the plaintiff, Wright and Gulf Oil executed certain mineral leases on the same property on which the plaintiff

---

3. Exhibit A–1 to affidavit of Mrs. Kilfoyle dated April 14, 1960.

4. Exhibit A–4 to affidavit of Mrs. Kilfoyle dated April 14, 1960.

5. John L. Roper Lumber Co. v. Hinton, D.C.N.C.1919, 260 F. 996.

held a royalty interest by virtue of the September 1943 deed. The defendants now seek summary judgment to the effect that the plaintiff has no right, title or interest to the mineral rights on the property, and as a result, the mineral leases between the two defendants are valid without any ratification on behalf of the plaintiff. In brief, the defendants take the position that Wright transferred only a royalty interest to the plaintiff and reserved to himself the right to lease the mineral interests, so long as the royalty interest held by the plaintiff was unimpaired. On the other hand, Mrs. Kilfoyle contends that the deed between Wright and herself conveyed to her all the mineral interests to the property in question and, consequently, the Wright to Gulf Oil lease is ineffectual

■ The question presented here has not been specifically answered by the Supreme Court of Alabama in so far as I am able to determine. However, that Court has repeatedly recognized the principle of law that a land owner may sever his interests in the property, conveying certain interests and at the same time reserving certain interests to himself and his heirs.[6]

In order to determine what reservations, if any, Wright made in the conveyance to the plaintiff, the Court must examine the deed itself. The form used by Mrs. Kilfoyle in preparing the deed was a State of Texas form known in that State as "Royalty Deed (Non-Participating) Form C–91." This form provides in part:

"And it is further understood and agreed that notwithstanding the Grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease, nor of participating in the making of future leases, should any exist-

ing or future leases for any reason become cancelled or forfeited, nor of participating in the bonus or bonuses which Grantor herein shall receive for any future lease, nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, now or hereafter;

"Nevertheless, during the term of this grant, neither the Grantor nor the heirs, * * * shall make or enter into any lease or contract for the development of said land or any portion of same for oil, gas or other minerals, unless each and every such lease, contract, leases or contracts, shall provide for at least a royalty on oil of the usual one-eighth * * *, and in the event Grantor, * * * shall operate and develop the minerals therein, Grantee herein shall own and be entitled to receive as a free royalty hereunder, (1) my undivided entire royalty * * *."

I interpret this to be the reservation clause of the deed. The plaintiff was aware of the above provisions because it was she who selected the form and prepared the deed. Furthermore, the evidence shows that she was not a novice in real estate transactions of this nature, having executed numerous similar leases on previous occasions. The above provisions do not require a strained interpretation. They say that the grantee (Mrs. Kilfoyle) acquires no right to participate in the making of future mineral leases on the property, but should the grantor (Wright) make such leases, the royalty interest of the grantee is to be preserved. There is no ambiguity in these provisions.

■ In Texas, the source of the deed form here in issue, a non-participating royalty is defined as an interest in the gross production of minerals which is carved out of the mineral fee estate as a free royalty which does not carry with

6. Alabama Fuel & Iron Co. v. Broadhead, 1924, 210 Ala. 545, 98 So. 789; Buckelew v. Yawkey, 1945, 247 Ala. 304,

24 So.2d 133; Crump v. Crump, 1953, 261 Ala. 504, 74 So.2d 713.

it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under, oil, gas, and mineral leases executed by the owner of the mineral fee estate.[7]

■■ The Supreme Court of Mississippi has distinguished between a non-participating royalty interest and an interest in minerals in place as follows:

"The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals." Mounger v. Pittman, 1959, 235 Miss. 85, 108 So.2d 565, 566.

In his dissenting opinion in the Mounger case, Justice Roberds makes the following interesting summation:

"In other words, a mineral interest is a present vested interest in the minerals in or under the ground. The holder has an interest whether the oil is ever produced or not. Royalty owners are vested with an interest only when the oil or gas is severed from its natural state and is produced as prescribed in the reservation." 108 So.2d at page 570.

With these definitions and comments in mind, I think it clear that if the plaintiff acquired a non-participating royalty interest under the deed, she did not acquire any right or title to the mineral interest in the property. If this be true, then it necessarily follows that the lease subsequently executed between the defendants is effectual and valid so long as the plaintiff's royalty interest is preserved. There is no question but what this interest was preserved.

■ An examination of the Wright to Kilfoyle deed leads the Court to the conclusion that Mrs. Kilfoyle acquired a mere royalty interest in the property and was not entitled to participate in the bonuses payable for, or in the delay rentals to accrue under, existing or future leases; and that it was not necessary for her to be joined in the execution of any subsequent leases by Wright. The title to the mineral interest to the property in question was reserved to and remained in Wright.

The plaintiff selected the form to be used in the preparation of the deed. Whether or not its express terms and conditions were those which the parties contemplated prior to execution is, I think, immaterial. The fact remains that the plaintiff, with years of experience, prepared the deed. If contrary terms and conditions were contemplated, she easily could have resorted to another form or expressed them.

Having concluded that the plaintiff acquired a mere royalty interest in the property and that the mineral interest remained in Wright, it follows that the Wright to Gulf Oil lease is effectual and valid. The defendant Wright's motion for summary judgment as to issues numbered 1, 3, and 4 is granted. Gulf Oil's motion for summary judgment as to issues numbered 1, 2, 3 and 4 is granted.

7. Federal Land Bank of Houston v. United States, Ct.Cl.1958, 168 F.Supp. 785; Schlitter v. Smith, 1937, 128 Tex. 628, 101 S.W.2d 543; Arnold v. Ashbel Smith Land Co., Tex.Civ.App., 307 S.W. 2d 818; see also Jones, Non-Participating Royalty, 26 Texas Law Review 569 (1948).